UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                              :

ITOFFEE R. GAYLE,                       :

                     Plaintiff,       :            18 Civ. 3774 (JPC)

                                :

       -v-                  :          <u>OPINION AND ORDER</u>

                                :

DAVID S. ALLEE and MORGAN LEHMAN  :
GALLERY,                              :

                                :

                   Defendants.     :

                                :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       This case is one of several lawsuits Itoffee R. Gayle, proceeding *pro se*, has brought in this District alleging violations of his asserted intellectual property for the phrase "Art We All." At issue before this Court are Gayle's claims of trademark and copyright infringement against photographer David Allee and the Morgan Lehman Gallery (collectively, "Defendants") for exhibiting and offering for sale a photograph that depicted graffiti tagged with the words "ART WE ALL ONE" and for similarly titling that photograph "Art We All One." Dkt. 55 ("Amended Complaint" or "Am. Compl."). Defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkts. 56, 57 ("Motion to Dismiss."). For the reasons set forth below, the Motion to Dismiss is granted, and Gayle's Amended Complaint is dismissed in its entirety.

## I.    BACKGROUND

       The following factual allegations are taken from the Amended Complaint. In the present posture, the Court accepts Gayle's allegations as true and draws all reasonable inferences in his favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The Court at this stage may also

consider statements or documents incorporated into the Amended Complaint by reference. *See Kleinman v. Elan Corp.,* 706 F.3d 145, 152 (2d Cir. 2013).

Gayle's claims relate to a photograph that David Allee took of two buildings in New York City (the "Photograph"). *See* Am. Compl. at 1, 8. Viewable in the bottom right corner of the Photograph is a small construction barrier tagged with graffiti reading, "ART WE ALL ONE." *See id.* at 8. The Photograph—which Allee titled "Art We All One"—was displayed for sale in the Morgan Lehman Gallery in 2017 as part of Allee's solo exhibition, "Chasing Firefly." *See id.* at 1, 8.

The Amended Complaint seeks relief "for the unauthorized use and damages caused as a result of unfair competition, trademark infringement under the Lanham Act and state law as well as copyright infringement under federal law." *Id.* at 3.[1] As to his trademark claims, Gayle alleges that he created the graffiti on the construction barrier, *see* Opp. at 1,[2] and that by using "ART WE

---

[1] While in his Opposition to the Motion to Dismiss, Gayle states that he brings copyright infringement under 17 U.S.C. § 504 and trademark infringement "under New York State common law," Dkt. 59 ("Opposition" or "Opp.") at 2, the Court construes Gayle's *pro se* Amended Complaint as raising claims for federal trademark and unfair competition violations under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a), federal copyright violations under 17 U.S.C. § 501, and trademark infringement under New York law. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks omitted)); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008) (same).

[2] Gayle includes a set of "FACTUAL ALLEGATIONS" in his Opposition. Although courts are typically constrained only to the pleadings in deciding a motion to dismiss, *see* Fed. R. Civ. P. 12(b), courts may consider a *pro se* plaintiff's additional materials, including his or her opposition to the motion, in light of "the mandate to read the papers of *pro se* litigants generously." *Burgess v. Goord*, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan 26, 1999); *see Adkins v. City of New York*, No. 19 Civ. 3628 (GBD) (DF), 2020 WL 2950979, at *5 (S.D.N.Y. Jan. 3, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 1031130 (S.D.N.Y. Mar. 3, 2020); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (addressing allegations in a *pro se* plaintiff's opposition to a motion to dismiss). The Court finds it appropriate to consider all of Gayle's submissions here, which provide additional clarity as to his allegations.

ALL ONE" in the image and title of the photo, Defendants have violated his trademark on the words "ART WE ALL" (the "Mark"), Am. Compl. at 1.[3]  Gayle attaches to his Amended Complaint a Trademark Certificate with Registration Number 5,108,721 for a service mark for "ART WE ALL" for "retail store services featuring works of art."  *See id.* at 29.  In support of his copyright claim, Gayle alleges that he holds a valid copyright relating to the phrase "ART WE ALL" through Registration Numbers VA-2-006-958 and VA 2-088-822, *id.* at 1, and that he is the "author, exclusive licensee, and owner of the registrations for the copyrightable works associated with 'ART WE ALL'/ 'ARTWEALL' and its variations," *id.* at 2.  Gayle further contends that the copyright "is for visual material *not* a short phrase and is therefore copyrightable visual art."  *Id.* at 2; *see also id.* ("It is this artistic design that comprises the copyrighted material, not the words by themselves . . . .").

## II.  PROCEDURAL HISTORY

The Court has taken great efforts to provide Gayle with time and resources to prosecute his case.  Gayle brought this suit on April 27, 2018, proceeding *pro se* and *in forma pauperis*.  *See* Dkts. 1 (the "Initial Complaint"), 2, 3.  This case was originally assigned to the Honorable Ronnie Abrams, United States District Judge for the Southern District of New York.  On June 13, 2018, Defendants moved to dismiss the Initial Complaint.  *See* Dkts. 8, 9 (the "First Motion to Dismiss").  On January 25, 2019, after Gayle had filed his brief in opposition to the First Motion to Dismiss, Dkt. 18, and Defendants had filed their reply brief, Dkt. 22, the Court directed the Clerk of the Court to attempt to find Gayle representation for the purpose of opposing Defendants' First Motion to Dismiss, *see* Dkt. 28.  After David P. Turchi, Esq., agreed to represent Gayle on a *pro bono*

---

[3] Gayle does not indicate in his filings whether he was authorized to create the graffiti on the construction barrier that is depicted in the Photograph.

basis for that limited purpose, *see* Dkt. 30, the Court granted Mr. Turchi additional time to oppose Defendants' First Motion to Dismiss, *see* Dkt. 31.   Mr. Turchi submitted an additional memorandum opposing the motion.  Dkt. 36.

During a telephone conference on April 10, 2020, Judge Abrams granted Defendants' First Motion to Dismiss.  Dkt. 49 ("4/10/20 Tr.").  During that conference, the Court determined that Gayle had not alleged a trademark infringement claim based on the factors outlined in *Polaroid Corp. v. Polaroid Electrics Corp.*, 287 F.2d 492 (2d Cir. 1961).  Specifically, the Court concluded that Gayle had not sufficiently alleged how the use of "ART WE ALL ONE" in the photograph would likely cause confusion with Gayle's trademark or how its use even infringed on his trademark.  4/10/20 Tr. at 3.  The Court further noted that Gayle had not alleged sufficient facts, such as the scope of the relevant comparison market, to allow the Court to meaningfully apply many of the *Polaroid* factors.  *Id.* at 4.  The Court also concluded that Gayle had not adequately alleged a copyright claim because he failed to plead what images were covered by the copyright and how any infringement was more than "*de minimis.*"  *Id.* 4-5.  The Court nonetheless gave Gayle leave to file an amended complaint.  *Id.* at 5.  Mr. Turchi, who was representing Gayle only for the limited purpose of opposing the First Motion to Dismiss, stated that he was unable to continue representing Gayle in this case.  *Id.* at 6-7.  Accordingly, the Court provided Gayle with 60 days to amend his Complaint, and further stated that it would endeavor to find him new *pro bono* counsel.  *Id.* at 7-8; *see also* Dkt. 48.

On July 14, 2020, Gayle, *pro se*, filed his Amended Complaint.  Dkt. 55.  On July 28, 2020, Defendants moved to dismiss the Amended Complaint, contending that it had failed to cure the deficiencies identified by Judge Abrams in her April 10, 2020 ruling.  Dkt. 56.  On August 24, 2020, Gayle submitted his Opposition, Dkt. 59, and on August 31, 2020, Defendants submitted

their reply brief, Dkt. 60.  On September 25, 2020, Judge Abrams issued an Order notifying the parties that she had been informed that *pro bono* counsel was interested in representing Gayle, and that Gayle would have 60 days from counsel's filing of a notice of appearance to supplement his briefing.  Dkt. 63.  That Order nonetheless made clear that, "[i]n the event that counsel has not filed a notice of appearance by October 30, 2020, the motion pending at Dkt. 56 will be deemed fully briefed."  *Id.*

This case was then reassigned to the undersigned.  *See* Dkt. 64.  On November 12, 2020, after no counsel filed a notice of appearance on behalf of Gayle, the Court informed the parties that the Motion to Dismiss the Amended Complaint was deemed fully briefed and that the Court would enter an opinion in due course.  Dkt. 65.

## III.    DISCUSSION

When reviewing a motion to dismiss, a court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)).  A plaintiff is required to plead sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in order to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Although this Court must "liberally construe" a *pro se* plaintiff's complaint, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), a "*pro se* litigant must still state a plausible claim for relief," *Thomas v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 8934 (JMF), 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016).  "Put another way, the Court's 'duty to liberally

construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'" *Id.* (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 287 (S.D.N.Y. 2009)).

### A. Gayle Has Not Pleaded a Plausible Claim of Federal Trademark Infringement or Unfair Competition Under the Lanham Act

Defendants moved to dismiss Gayle's federal trademark infringement and unfair competition claims pursuant to Rule 12(b)(6) for failure to state a claim, on the basis that (1) Gayle has not alleged sufficient facts to establish that Defendants' use of the alleged trademark is likely to confuse consumers and (2) the claims are barred by the First Amendment. The Court addresses each contention in turn.

#### 1. Gayle Has Not Alleged That the Photograph Is Likely to Cause Confusion

In his Amended Complaint, Gayle brings claims for federal "trademark infringement" and "unfair competition." Am. Compl. at 2. Section 32 of the Lanham Act prohibits any person from "us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). Similarly, Section 43(a) of the Lanham Act—which is the statute's unfair competition provision—prohibits, as relevant here, a person from "us[ing] in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." *Id.* § 1125(a). Claims under both Sections of the Lanham Act are considered trademark infringement and are assessed under the same analysis. *Louis Vuitton Malletier S.A. v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006).

To state a claim of trademark infringement under the Lanham Act, a plaintiff must plead that the "defendant's use of a similar mark is likely to cause consumer confusion." *Id.* at 115 (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993)); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634 (S.D.N.Y. 2008) (Chin, J.) ("The hallmark of infringement is the likelihood of confusion by the buying public between the plaintiff's goods or services and that of the defendant." (citing *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000) and *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09 (2d Cir. 1997))). There must be "a probability of confusion, not a mere possibility," affecting "numerous ordinary prudent purchasers." *Gruner + Jahr*, 991 F.2d at 1077. "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005) (quoting *Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, 64 U.S.P.Q. 2d 1039, 1041 (S.D.N.Y. 2002)).

In assessing whether an infringement is likely to cause confusion, courts consider a non-exclusive list of factors originally outlined in the Second Circuit's decision in *Polaroid Corp.*, 287 F.2d at 495: (1) "strength of the trademark;" (2) "similarity of the marks;" (3) "proximity of the products and their competitiveness with one another;" (4) "evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product;" (5) "evidence of actual consumer confusion;" (6) "evidence that the imitative mark was adopted in bad faith;" (7) "respective quality of the products;" and (8) "sophistication of consumers in the relevant market." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (citing *Star Indus., Inc.*, 412 F.3d at 384). In making a showing of confusion, a plaintiff need not show that the public believed "the owner of the mark actually produced the item and

placed it on the market," and instead may show that the public believed "the mark's owner sponsored or otherwise approved the use of the trademark."  *Star Indus., Inc.*, 412 F.3d at 383-84 (internal quotation marks omitted).

Although Gayle was granted leave to amend his Initial Complaint and was provided with substantial guidance by Judge Abrams as to that complaint's flaws, Gayle remains unable to allege sufficient facts to state a plausible claim that the Photograph is likely to cause confusion.  In his Amended Complaint, Gayle alleges that Defendants' use of his trademark "[c]auses great confusion" because Defendants "are associated as the sources in connection with the title of the Photo," which "completely removes" Gayle "as the creator and source of . . . Defendant's Photo or affiliation with the Photo in any way."  Am. Compl. at 1.  Gayle adds the following factual allegations "[t]o further clarify that [he] has sufficiently set forth in proving . . . a valid cause of action for confusion": (1) "Defendant[s] did not just use a similar mark, they used the actual mark in their Photo"; (2) the products are both "artistic expressions, both are graffiti-like and depict a particular urban mood and atmosphere"; and (3) Defendants showed bad faith in using the trademark because "Plaintiff registered the mark and copyrighted the design under a very similar name before the Defendant's copying."  *Id.* at 2 (emphasis removed).

These allegations are insufficient.  As an initial matter, it should be noted that Gayle does not actually allege that he created the *Photograph*, *see id.* at 1, but rather that he created the *graffiti* that is included in the Photograph, *see* Opp. at 1.  Accordingly, the Court understands Gayle's contention that he has been "completely remove[d] . . . as the creator and source" of "Defendant's Photo" to mean that he has been removed as the source of the graffiti or the phrase "Art We All One."  But his broad statement that this "[c]auses great confusion" is, on its own, too conclusory to support his claim.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice.").  Moreover, despite the Court's clear identification of the need to address the *Polaroid* factors, Gayle's remaining allegations, at best, only broadly address the "degree of similarity between the two marks" and Defendants' supposed bad faith in adopting the mark.  287 F.2d at 495.

But even Gayle's statements that Defendants "used the actual mark in their Photo" and that the images are "graffiti-like" and "depict a particular urban mood and atmosphere," while suggesting some similarity between the Mark and the graffiti in the Photograph, do not actually support how a customer would likely be confused "as to source, sponsorship, affiliation, connection, or identification" of the trademark.  *Star Indus., Inc.*, 412 F.3d at 383.  "In assessing similarity, courts look to the overall impression created by [the images] and the context in which they are found[,] and consider the totality of factors that could cause confusion among prospective purchasers."  *Gruner + Jahr*, 991 F.2d at 1078.  Gayle's Mark is for the phrase "ART WE ALL" in "standard characters without claim to any particular font style, size or color."  Am. Compl. at 29.  But while Gayle states that Defendants "used the actual mark," he does not address the fact that Defendants did not use an identical mark:  The Photograph depicted the phrase "ART WE ALL ONE," which also was its title, which differs slightly from Gayle's Mark for "ART WE ALL."  *See Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 581-82 (2d Cir. 1991) (concluding that two designations were not substantially similar so as to cause confusion, in part because although they both used the words "New Choices," one "always includes the word 'Press,' whereas" the other party's "mark always includes the words 'For The Best Years'").  Simply put, even if the phrases are similar, at best, the use of a common phrase is not a *per se* trademark violation absent some showing that the use of that phrase will cause confusion.  Gayle has made no allegations to support such a showing in this case.

Gayle's conclusory allegations that appear to address the *Polaroid* consideration of whether the imitative mark was adopted in bad faith are similarly unavailing. That Gayle registered his trademark prior to Defendants' alleged use of that Mark, *see* Am. Compl. at 2, Defendants may have "kn[own] of the Plaintiff's use of the 'ART WE ALL' mark throughout New York City," Opp. at 1, and "Plaintiff's mark/tag [had] been pervasive around New York City since 2012," *id.*, do not alone support a finding that Defendants engaged in bad faith. *See Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 268 (S.D.N.Y. 2005) ("Defendant's argument that plaintiffs were aware of their mark is not dispositive and does not give rise to a necessary inference of bad faith, 'because adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith.'" (quoting *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 584 (2d Cir. 1991))). Gayle must allege more to support a claim, such as facts suggesting that Defendants "adopted [Gayle's] mark with the intention of capitalizing on [Gayle's] reputation and goodwill." *Id.* (quoting *Edison Brothers Stores, Inc. v. Cosmair, Inc.*, 651 F. Supp. 1547, 1560 (S.D.N.Y. 1987)); *see Gayle v. Larko* ("*Larko I*"), No. 18 Civ. 3773 (ER), 2019 WL 4450551, at *3 (S.D.N.Y. 2019) ("[G]ayle alleges that Defendants capitalized on the Mark's brand name recognition in relation to promoting art gallery services. . . . These are conclusory allegations that fail to raise a 'serious question' as to a likelihood of confusion." (quoting *Gottlieb*, 590 F. Supp. 2d at 631)). He has not done so here.

The inquiry here is, importantly, Defendants' "intent to confuse" or to "deceive," not their "intent to copy." *Starbucks*, 588 F.3d at 117. There are no allegations that Defendants labeled the Photograph in a way "suggest[ing] an untruthful association" between the Mark and the Photograph, *see GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18 Civ. 4945 (JMF), 2019 WL 293329, at *9 (S.D.N.Y. Jan. 23, 2019), such as labeling that would suggest that Defendant Allee

created the graffiti in the Photograph or that Gayle endorsed or created the Photograph.  While Defendant Allee may have intended to use the Mark in both the Photograph and the title, Gayle has simply not alleged any facts supporting Defendants' intent to deceive.

Gayle fails to adequately address any of the remaining *Polaroid* factors.  Gayle does not address the strength of his mark, beyond, perhaps, a conclusory allegation in his Opposition that his Mark is widespread.  *See* Opp. at 1 (claiming that his graffiti "tags have become ubiquitous throughout New York City as evidenced by numerous social media posts displaying his tags").  He does not, however, address "the distinctiveness of the mark," meaning "'its tendency to identify the goods' as coming from a particular source."   *Lang*, 949 F.2d at 581 (quoting *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir. 1979)).  Nor does Gayle make any concrete allegations about the competitiveness of the products, let alone the relevant market.  Gayle merely alleges that he "offers for sale works of art and goods containing the Plaintiff's protected phrase 'ART WE ALL' in the art market as a whole as well as the subset markets of professional photography and street photography," Am. Compl. at 1, and that both products at issue here are "artistic expressions," *id.* at 2.  But he makes no allegations about exactly what types of goods are sold, whether Defendants compete in the same markets that he does, or how the Photograph threatens competitive harm in any market.  *See Ahmed v. GEO USA LLC*, No. 14 Civ. 7486 (JMF), 2015 WL 1408895, at *3 (S.D.N.Y. Mar. 27, 2015) (concluding that the plaintiff's "conclusory" and "broad" statement that he "is involved in [the] broadcasting and media industry . . . whereas the Defendant is also infringing the same mark through broadcasting, news publication and entertainment" was "plainly insufficient as a matter of law").  Moreover, the Court is unable to tease out any facts alleged in Gayle's Amended Complaint or Opposition regarding how he will "'bridge the gap' by developing a product for sale in the market of the alleged

infringer's product" or even the "sophistication of consumers in the relevant market," *Starbucks Corp.*, 588 F.3d at 115, thereby falling short of a favorable showing under those *Polaroid* factors as well.

And looking to the Photograph itself—which only depicts the graffiti "ART WE ALL ONE" in the lower corner and not even immediately visible—the Court does not conclude that a consumer would likely to be confused in this case. *See Roberts v. Bliss*, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017) ("In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." (quoting *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.* ("*Louis Vuitton II*"), 868 F. Supp.2d 172, 183 (S.D.N.Y. 2012))).  In fact, multiple courts in this District have rejected similar claims brought by Gayle concerning graffiti reading "Art We All One" appearing in artwork. *See Larko I*, 2019 WL 4450551, at *3 ("Here, [the defendant's] sole use of the phrase 'Art We All One' was in small red lettering in the background of a single painting.  No art gallery attendee would consider whether Gayle or Defendants sponsored the writing on the wall, surrounded by other graffiti, depicted in the painting." (citation omitted)); *see also Gayle v. Larko* ("*Larko II*"), No. 18 Civ. 3773 (CM), 2018 WL 10669645, at *2 (June 28, 2018) (dismissing trademark infringement claim against an artist for her painting of a graffiti scrapyard featuring the tags "Art We All One," in part because Gayle "fail[ed] to plead that [the artist's] painting is likely to cause confusion as to the source of any product").  And, despite Judge Abrams's explicit direction to both parties to address "how other courts have treated copyright and trademark infringement claims where a photograph is taken of an original work of art" and "to make sure to address and/or distinguish other cases from this district involving similar claims brought by

plaintiff, such as *Gayle v. Larko*, 2019 WL 4450551," 4/10/20 Tr. at 5-6, Gayle has not addressed or distinguished *any* other cases in which courts have treated similar claims, including his own cases. While the Court recognizes that the Photograph includes only one image of graffiti, not the many present in *Larko I*, this alone does not somehow compel the conclusion that the use of the Mark is likely to cause confusion. Nor does the fact that Defendant Allee titled the Photograph "Art We All One," which, as explained above, would not cause the average consumer to believe that Gayle endorsed the Photograph or that Defendants created the graffiti. Accordingly, the Court finds that Gayle has failed to make any showing that the ordinary consumer would likely be confused, either because of the placement of the graffiti or title of the Photograph.

In sum, Gayle's accusations regarding the similarity of the images and Defendants' purported bad faith in using the Mark are insufficient. And, despite Judge Abrams's guidance during the April 10, 2020 telephone conference, Gayle has been unable to make any factual allegations regarding the remaining *Polaroid* factors that would allow the Court to find a likelihood of consumer confusion. Accordingly, the Court finds that Gayle has not stated a claim for federal trademark infringement.

### 2. The Photograph's Use of "ART WE ALL ONE" Is Protected by the First Amendment

For similar reasons, the First Amendment of the United States Constitution protects the conduct at issue here. The Second Circuit has recognized that "[b]ecause overextension of Lanham Act restrictions in the area of titles might intrude on First Amendment values," courts "must construe the Act narrowly to avoid such a conflict." *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989). In *Rogers*, the Second Circuit, addressing the use of trademarks used in movie titles, held that the defendant's use of a mark is protected so long as it is (1) "artistically relevant" and (2) not "explicitly misleading." *Id.* at 999-1,000. The Second Circuit has since clarified that "the

*Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic expression," *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc*., 886 F.2d 490, 495 (2d Cir. 1989), and several courts have found that the question of First Amendment protection is properly addressed at the motion to dismiss stage, *see, e.g.*, *Medina v. Dash Films, Inc.*, No. 15 Civ. 2551 (KBF), 2016 WL 3906714 (S.D.N.Y. Jul. 14, 2016), at *5; *Louis Vuitton II*, 868 F. Supp. 2d at 183.

Initially, the *Rogers* framework is triggered only if the issue concerns a work of artistic impression.  Defendants contend—and Gayle does not dispute[4]—that the Photograph was an "artistic work."  *See Kaplan v. California*, 413 U.S. 115, 119-20 (1973) ("Pictures, films, paintings, drawings, and engravings . . . have First Amendment protection."); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 796 (9th Cir. 2003) (applying *Rogers* to a claim that the image of a Barbie doll in a photograph infringed on Mattel's trademark).  And under *Rogers*, both the physical artistic work and title of an artistic work are entitled to First Amendment protection.  *See Rogers*, 875 F.2d at 998-99 ("Titles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion."); *see also Cliff Notes, Inc.*, 886 F.2d 490.

The Photograph here clearly meets both prongs of the *Rogers* test.  First, it undoubtedly has an artistic purpose—which, again, Gayle does not dispute.  This is not a difficult standard to meet, as the "threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'"  *Louis Vuitton II*, 868 F. Supp. 2d at 178 (quoting *Rogers*, 875 F.2d at 999) (emphasis in *Louis Vuitton II*)); *see also E.S.S. Entm't*

---

[4] For instance, in asserting why there is "closeness" between the Photograph and his purported trademark, Gayle alleges that "both are artistic expressions."  Am. Compl. at 2.

*2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (concluding that under *Rogers*, "the level of relevance merely must be above zero"). As Gayle further recognizes in his Amended Complaint, the Photograph was displayed at Defendant Morgan Lehman Gallery as part of Mr. Allee's solo exhibition "Chasing Firefly." Am. Compl. at 1. Defendants convincingly argue that "the use of the Mark[] is artistically relevant to the Photograph because the inclusion of the Graffiti is necessary to accurately depict that particular New York City location at the time that the Photograph was taken, and as the part of the title, because the title reflects text within the body of the Photograph." Motion to Dismiss at 12; *see also Larko I*, 2019 WL 4450551, at *2 (concluding that the inclusion of "ART WE ALL" graffiti was artistically relevant to depicting a graffiti-covered streetscape). Again, Gayle does not dispute this. While Gayle alleges in his Opposition that the Photograph was sold, *see* Opp. at 1-2, which, when read liberally, could be read as suggesting that it has a commercial purpose, this alone does not remove the Photograph's artistic purposes or bring the Photograph beyond the protection of the First Amendment. *Cf. Rogers*, 875 F.2d at 998 (recognizing the interrelated nature of many commercial and artistic works).

Second, the Photograph is not "explicitly misleading." To address this prong of the *Rogers* test, the Court assesses "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise authorized by the plaintiff." *Louis Vuitton II*, 868 F. Supp. 2d at 179 (internal quotation marks and alterations omitted). While the Court again considers the *Polaroid* factors here, "the finding of likelihood of confusion must be *particularly compelling* to outweigh the First Amendment interest recognized in *Rogers*." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993) (emphasis added). For many of the reasons stated above, there is no evidence supporting a claim

that the Photograph was misleading by suggesting to the public that Gayle was the creator of the Photograph. Gayle in fact recognizes that Defendants have "completely remove[d]" any association with Gayle "as the creator and source of . . . Defendant's Photo or affiliation with the Photo in any way." Am. Compl. at 1. There is no "explicit indication" or "overt claim" in the Photograph or its title that would induce a member of the public to believe that Gayle endorsed, sponsored, or otherwise was associated with the Photograph. *See Rogers*, 875 F.2d at 1001.

In sum, even crediting Gayle's allegations, the Court finds that Defendants' use of "ART WE ALL ONE" is protected by the First Amendment.

## B. Gayle Has Failed to Properly Plead a Federal Copyright Claim

In addition to federal trademark infringement, Gayle alleges copyright infringement in violation of 17 U.S.C. § 501.[5] "To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 108-09 (2d Cir. 2001). To establish copyright infringement, "a plaintiff with a valid copyright must demonstrate that:" (1) "the defendant has actually copied the plaintiff's work" and (2) "the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's" work. *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). As to the latter requirement, a plaintiff must show "(i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is 'more than *de minimis*.'" *Tufenkian*

---

[5] Gayle cites to 17 U.S.C. § 504, which is the damages provision for federal copyright infringement. *See* Opp. at 2. Accordingly, the Court assesses Gayle's copyright infringement claim under 17 U.S.C. § 501, the substantive violation provision.

*Import/Export Ventures, Inc. v. Einstein Moomjy, Inc*., 338 F.3d 127, 131 (2d Cir. 2003) (quoting

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc*., 150 F.3d 132, 137-38 (2d Cir. 1998))).

Defendants contend that Gayle's copyright claim should be dismissed because (1) he fails

to properly plead a claim for copyright infringement, and (2) as a matter of law, Gayle cannot state

a copyright claim because (i) the graffiti in the Photograph is not subject to copyright protection

and (ii) Defendants' use of Gayle's copyrighted work is *de minimis*.[6]  The Court addresses each

argument in turn.

### 1.   Gayle Has Not Pleaded a Claim of Federal Copyright Infringement

Defendants first contend that Gayle has not properly pleaded a federal copyright

infringement claim.  In assessing a claim of copyright infringement at the motion to dismiss stage,

courts in this District require a plaintiff to allege: (1) "which specific original works are the subject

of the copyright claim," (2) "that [the] plaintiff owns the copyrights in those works," (3) "that the

copyrights have been registered in accordance with the statute," and (4) "by what acts during what

time the defendant infringed the copyright."  *Kelly v. L.L. Cool J*, 145 F.R.D. 32, 36 (S.D.N.Y.

1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *see Larko I*, 2019 WL 4450551, at *3 (same); *but see*

*Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (declining to address whether the

four-part test is correct).

---

[6] Defendants also argue that, assuming *arguendo* Gayle had stated a cognizable claim of
copyright infringement, that claim should be dismissed pursuant to the fair use doctrine.  Motion
to Dismiss at 19-21.  Because "the fair use defense involves a careful examination of many factors,
often confronting courts with a perplexing task," the Second Circuit has cautioned that "[i]f the
allegedly infringing work makes such a quantitatively insubstantial use of the copyrighted work
as to fall below the threshold required for actionable copying, it makes more sense to reject the
claim on that basis and find no infringement, rather than undertake an elaborate fair use analysis
in order to uphold a defense."  *Ringgold v. Black Ent. Television, Inc*., 126 F.3d 70, 76 (2d Cir.
1997).  Accordingly, the Court declines to reach this argument in light of its holdings as to the
other grounds for dismissal.

During the April 10, 2020 telephone conference, Judge Abrams concluded that "[e]ven accepting that plaintiff holds a valid copyright in certain works of art with respect to the ART WE ALL graffiti tag, he has not adequately alleged that he successfully registered his graffiti tag as protected expression." 4/10/20 Tr. at 4.  The Court further elaborated that Gayle "has not identified which original works are covered by his two copyright registrations—that is, which specific images [attached to plaintiff's opposition] belong to which copyright registration."  4/10/20 Tr. at 5.

In his Amended Complaint, Gayle has alleged that he owns two valid copyrights and that those copyrights were registered in accordance with statute.  He has also alleged by what acts and in what manner that those copyrights were infringed, namely the creation and display of Allee's Photograph.  Nonetheless, Gayle has not alleged which specific works have been infringed.  In support of his Amended Complaint, Gayle has presented two copyright certifications—VA-2-006-958 entitled "Art We All," containing 8 photos and VA 2-088-822, entitled "Art We All Group Registration Photos," containing 13 photos.  But he has not alleged which specific images have been infringed, instead seemingly arguing that it is the *text* "ART WE ALL" and "ARTWEALL" that are copyrightable in and of themselves.  But, as explained below, those phrases, absent more, do not merit copyright protection.  Therefore, the Court finds that Gayle has not adequately pleaded a copyright claim.

### 2. The Photograph and Gayle's Copyrighted Work Are Not Substantially Similar, as the Only Common Elements Are Non-Copyrightable

Beyond the procedural pleading deficiencies, Gayle's Amended Complaint fails for a more fundamental reason:  The image of the graffiti in the Photograph and Gayle's copyrighted work are not substantially similar as a matter of law, since the only common elements are non-copyrightable.  It is well-established that at the motion to dismiss stage, a court may determine that

18

two pieces of work are not substantially similar for the purposes of a copyright infringement claim if "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)). Although in making such a determination courts must consider the facts alleged in the complaint, "[i]n copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them.'" *Id.* (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)).

"The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design*, 262 F.3d at 111 (quoting *Hamil Am.*, 193 F.3d at 100); *see also Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (noting that the ordinary observer test requires the court to ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work" (internal quotation marks omitted)). If a work has "both protectible and unprotectible elements," however, the court must undertake a "more discerning" analysis and "attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar." *Gaito*, 602 F.3d at 66 (internal quotation marks omitted). The Second Circuit has nonetheless cautioned that, under either test, courts are not "required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable." *Knitwaves, Inc.*, 71 F.3d at 1003. Instead, courts are "principally guided 'by comparing the contested design's "total concept and overall feel" with that of the

allegedly infringed work,' as instructed by [the court's] 'good eyes and common sense.'" *Gaito*, 602 F.3d at 66 (citation omitted) (quoting *Tufenkian*, 338 F.3d at 133 and then *Hamil Am.*, 193 F.3d at 102). Courts must therefore assess "whether the alleged infringer has misappropriated 'the original way in which the author has selected, coordinated, and arranged the elements of his or her work.'" *Id.* (quoting *Knitwaves Inc*., 71 F.3d at 1004).

The Court first considers whether the phrase "ART WE ALL" is copyrightable, and concludes that it is not. "[I]t is axiomatic that words, short phrases, titles and slogans are not subject to copyright, even if they are trademarked." *Moody v. Morris*, 608 F. Supp 2d 575, 579 (S.D.N.Y. 2009); 37 C.F.R. § 202.1(a) (stating that "[w]ords and short phrases such as names, titles, and slogans" are not subject to copyright). In fact, this is not the first court in this District to reject Gayle's argument that the phrase "ART WE ALL" is copyrightable. *See Larko I*, 2019 WL 4450551, at *3 (concluding that the phrase "Art We All" "[o]n its face . . . is not copyrightable"); *Larko II*, 2018 WL 10669645, at *3 ("[C]opyright protection is not available for the phrase 'Art We All' itself because a short phrase generally does not exhibit the minimal creativity required for copyright protection."); *Gayle v. Hoffman*, No. 18 Civ. 3772 (CM), 2018 WL 11016521, at *2 (S.D.N.Y. June 25, 2018) ("But even if that phrase [*i.e.*, "Art We All"] could be trademarked—a question the Court addresses in the negative below—this phrase itself may not be copyrighted, even if it could be trademarked."). And another court in this District also has rejected a similar attempt to copyright phrases used in graffiti. *See Reece v. Marc Ecko Unltd.*, No. 10 Civ. 2901 (JSR) (DF), 2011 WL 4112071, at *8 (S.D.N.Y. Aug. 19, 2011) (concluding that graffiti tags reading "Dip" and "Dipism" were not protected by copyright law), *report and recommendation adopted*, 2011 WL 4069637 (S.D.N.Y. Sept. 9, 2011).

The Court nonetheless considers Gayle's argument that "[i]t is this artistic design that comprises the copyrighted material, not the words by themselves." Am. Compl. at 2. The Court recognizes that even if the words here are not subject to copyright protection, it should consider whether Gayle presented the words in an original manner that would be protectible. *See Reece*, 2011 WL 4112071, at *9 (citing 17 U.S.C. § 102(b)); *see also Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) ("Simply because a work is copyrighted does not mean every element of that work is protected."). But Gayle does not point to any component parts that would be protected here. And, after reviewing the numerous images attached to Gayle's Amended Complaint, which are allegedly covered by the copyrights at issue, the Court is unable to identify protected elements that have been infringed. *See Reece*, 2011 WL 4112071, at *8 (declining to find that a videogame infringed the plaintiff's trademark covering certain graffiti, after considering the defendant's use of the words "Dip" or "Dipism," "certain styles of graffiti lettering," "certain color schemes," "geometric shapes . . . to ornament the 'i' in 'Dip'" and "certain backgrounds to the word[s]").

The Court considers, for instance, the style of lettering and color schemes. There is some similarity between the writing style used in the graffiti tag and one of the many images that Gayle has provided. *See* Am. Compl. at 10. But copyright law does not protect "variations of typographic ornamentation, lettering, or coloring." 37 C.F.R. § 202.1(a); *see also Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222, 232 (S.D.N.Y. 2013). Moreover, the photographs attached to the Amended Complaint feature a range of lettering styles and color schemes, whereas the graffiti in the Photograph appears to be written in black or another dark colored plaint. And there is no discernable background to the lettering in the Photograph, beyond the traffic barrier upon which it is written, that would support a finding that the unique design is protectible as artistic expression. Accordingly, looking at both the elements and the overall look

of the copyrighted images and the graffiti, the Court concludes that Gayle has not stated a claim for copyright infringement.

### 3.   Any Alleged Copyright Infringement is *De Minimis*

Gayle's claim fails for yet another reason:  Any alleged infringement here is *de minimis*. Copying a piece of work is not a copyright violation if the copying is *de minimis,* meaning that it is so "trivial . . . as to fall below the quantitative threshold of substantial similarity." *Ringgold v. Black Ent. Television Inc.,* 126 F.3d 70, 74 (2d Cir. 1997).   The Court must consider the "observability of the copyrighted work in the allegedly infringing work," *Sandoval v. New Line Cinema Corp.,* 147 F.3d 215, 217 (2d Cir. 1998), which depends on "the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence," *Ringgold,* 126 F.3d at 75.

In support of his argument that Defendants' use of the mark was not *de minimis*, Gayle again points to "the similarity of the Mark," "the closeness of the products," and "defendant's motive and [lack of] good faith."   Am. Compl. at 2.   But, as the Second Circuit has explained, "substantial similarity" for the purposes of the *de minimis* inquiry is not entirely about whether something was in fact copied.   *See Ringgold*, 126 F.3d at 74-75.   In other words, there is a difference between "factual copying"—which for purposes of this analysis, the Court will assume that Gayle has established—and "actionable copying"—*i.e.*, copying that is "quantitatively and qualitatively sufficient to support the legal conclusion that infringement . . . has occurred."   *Id.* at 75.  "The qualitative component concerns the copying of expression, rather than ideas, a distinction that often turns on the level of abstraction at which the works are compared."   *Id.*   By contrast, "[t]he quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying."   *Id.*

Accordingly, the Court must look not to whether there was factual copying, but rather whether that copying rose above a *de minimis* level.  Other courts have repeatedly rejected Gayle's claim that the use of his copyright in another image, without more, is anything more than *de minimis*.  *See Larko I*, 2019 WL 4450551, at *4 ("Defendants' limited use of the phrase in the background of the painting is *de minimis*.  It was displayed on just one occasion at the Lyons Gallery exhibition."); *Gayle v. Home Box Office, Inc.*, No. 17 Civ. 5867 (JMF), 2018 WL 2059657, at *3 (S.D.N.Y. May 1, 2018) (concluding that Gayle's claim that HBO committed copyright infringement by including in a television show "a fleeting shot of barely visible graffiti painted on what appears to be a dumpster in the background of a single scene" "border[ed] on frivolous"), *appeal dismissed*, No. 18-1536, 2018 WL 6048022 (2d Cir. Sept. 13, 2018), *cert. denied*, 139 S. Ct. 2709 (2019).  Again, despite Judge Abrams's invitation for the parties to distinguish these other cases in their briefing, Gayle failed to discuss them at all.  While the Court concludes that this case presents a somewhat closer call than that the allegations before the Honorable Edgardo Ramos in *Larko I*, where Gayle's graffiti was one tag among many, *see Larko I*, 2019 WL 4450551, at *1, the Court nonetheless concludes that the Photograph's incorporation of Gayle's graffiti was *de minimis* here as well.  According to the Amended Complaint, the Photograph was on display only at one exhibition at the Morgan Lehman Gallery in 2017.  Moreover, while the Photograph is titled "Art We All One," the actual graffiti appears in small print in the bottom corner of the Photograph in a manner that is far less prominent than the apartment buildings that dominate the vast majority of the Photograph, and even less prominent than other items in the Photograph like a "Do Not Enter" sign and a bicycle.  Accordingly, any alleged infringement concerning the use of the "Art We All One" phrase was both qualitatively and quantitatively *de minimis* such that it cannot support an infringement claim.

### C.  Gayle Fails to State a Claim for State Law Trademark Infringement

Finally, Gayle raises additional state law trademark claims.  Generally, if a court dismisses all of a plaintiff's federal claims, it will decline to exercise supplemental jurisdiction of the plaintiff's state law claims.  *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).  However, a court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) if it determines that doing so is proper after "balanc[ing] the traditional 'values of judicial economy, convenience, fairness, and comity.'"  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Here, jurisdiction is proper because "there are no material differences between the standards that apply to Lanham Act claims and the standards that apply to New York trademark and unfair competition claims."  *Gayle*, 2018 WL 2059657, at *4.  Accordingly, since it would be inefficient to allow Gayle to bring these same claims in state court, the Court dismisses Gayle's state claims for the same reasons it dismisses his Lanham Act claims.

### IV.    CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED, and Gayle's Amended Complaint is dismissed with prejudice.  The Clerk of the Court is respectfully directed to terminate the motion pending at Docket Number 56 and close this case.

SO ORDERED.

Dated: January 13, 2021
       New York, New York

_____
JOHN P. CRONAN
United States District Judge